Dear Mr. Smith:
You have requested an opinion of this office concerning the constitutionality of a policy which allows the distribution of Bibles on a university campus by both University-recognized and non-recognized groups.
The U.S. Constitution First Amendment provides:
 "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."
The Louisiana Constitution (1974), Article 1, Section 8, provides:
 "No law shall be enacted respecting an establishment of religion or prohibiting the free exercise thereof."
In your request you make reference to Attorney General Opinion, 90-634 which was released in December of 1990. In that Opinion this office expressed the view that the distribution of Bibles by the Gideons to children while in the classroom would be a violation of the Establishment Clause of the U.S. Constitution,First Amendment and Louisiana Constitution Article 1, Section 8
(1974). Opinion 90-634 remains the opinion of this office. However, it is evident from the facts that 90-634 is distinguishable from the case at hand.
In this particular case, the distribution of Bibles is occurring on a state university campus, not to children in the classrooms of public schools. By allowing the distribution of Bibles on campus, the University administration is not endorsing a particular religion, but instead, is allowing for the free exchange of ideas among college students and faculty. A violation of the Establishment Clause would arise in this situation, if the administration were to allow only one particular religious group to distribute their materials on Southeastern's campus.
Finding no Establishment Clause violation, it is pertinent to address the First Amendment's protection of free speech in terms of both University-recognized and non-recognized groups. The United States Supreme Court stated in Tinker v. Des Moines Indep. School District, 393 U.S. 503, 89 S.Ct. 733,21 L.Ed.2d 731 (1969), that students are entitled to First Amendment rights, even in light of the special characteristics of the school environment. These rights necessarily extend to college and university students.
In Tinker a school regulation was challenged which prohibited the wearing of black armbands to school in protest of the Vietnam conflict. The Supreme Court held that the prohibition of this conduct was an unconstitutional infringement of the students' right to free speech. Citing Burnside v. Byars,363 F.2d 744, 749, the Court stated:
 "Certainly where there is no finding and no showing that engaging in the forbidden conduct would `materially and substantially interfere with the requirements of appropriate discipline in the operation of the school,' the prohibition cannot be sustained."
The right to express one's self, whether in or out of the classroom, includes the distribution of religious material. However, this right is not absolute. The Supreme Court has recognized the government's authority to regulate, in a reasonable manner, the time, place and manner in which public forums are used for the expression of ideas. Cox v. Louisiana,379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). In the case of Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294,33 L.Ed.2d 222 (1972), a city ordinance was challenged which prohibited a person standing on adjacent ground to a school building from willfully making a noise or diversion which would disturb the peace or good order of the classes in session. In its decision the Grayned court opined:
 "The nature of a place, `the pattern of its normal activities, dictate the kinds of regulations of time, place and manner that are reasonable.'"
and, referring to Tinker v. Des Moines, supra.,
 "Just as Tinker made clear that school property may not be declared off limits for expressive activity by students, we think it clear that the public sidewalk adjacent to school grounds may not be declared off limits for expressive activity by members of the public. But in each case, expressive activity may be prohibited if it `materially disrupts classwork or involves substantial disorder or invasion of the rights of others.'"
Thus, the Court found the anti-noise ordinance to be constitutionally permissible because it was narrowly tailored to further the city's compelling interest in having an undisrupted school session, and it did not unnecessarily interfere withFirst Amendment rights.
It is clear from these cases that the rights of both University-recognized and non-recognized groups to distribute materials on Southeastern's campus must be regulated in a manner which does not unreasonably interfere with their First Amendment rights. The nature of the particular area of campus should be taken into consideration in determining the reasonableness of any regulation, some areas being inherently public and conducive to the exercise of free speech while other areas are less so.
With these factors in mind, the University may regulate speech-related conduct which disrupts the orderly administration of the University or substantially impairs others rights. These regulations should be narrowly drawn in furtherance of remedying the particular disruption or harm.
Any unreasonable regulation of either a University-recognized or non-recognized group would be an unconstitutional infringement of its rights under the First Amendment of the U.S. Constitution and Article 1, Section 8 of the Louisiana Constitution (1974).
Hoping this to be of sufficient information, I remain,
Yours very truly,
 RICHARD P. IEYOUB Assistant Attorney General
 BY: BETH A. CONRAD Assistant Attorney General
RPI/BAC:pb 0038p